2002-NMCA-073

50 P.3d 565

**Ted WIARD, Plaintiff–Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant.**

**No. 21,819.**

Court of Appeals of New Mexico.

April 15, 2002.

Certiorari Denied, No. 27,507, May 28, 2002.

Anthony G. López Taos, NM, for Appellee.

Rudolph A. Lucero, Miller, Stratvert & Torgerson, P.A., Albuquerque, NM, Thomas A. Simons, IV, Charles Henry, Simons Law Firm, Santa Fe, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} This case addresses coverage for a separate loss of consortium claim under the claimant's uninsured/underinsured automobile policies, pursuant to NMSA 1978, § 66-5-301(B) (1983). Defendant State Farm Mutual Automobile Insurance Company (State Farm) appeals from a summary judgment order in favor of Plaintiff Ted Wiard (Wiard) on Wiard's complaint for declaratory relief. The trial court determined State Farm was liable for uninsured/underinsured motorist (UIM) coverage for Wiard's loss of consortium claims based upon the deaths of his two daughters in an automobile accident. Because the tortfeasor was not underinsured for these claims, we reverse the trial court's judgment.

### BACKGROUND

{2} The underlying facts in this case are not in dispute. This case arises from a tragic automobile accident on July 29, 1996, that resulted in the deaths of Wiard's two minor daughters, Amy and Keri. The girls were passengers in a car driven by their grandmother, Rachel Devlin (Devlin). Because of Devlin's negligence, the automobile collided with a sanitation truck. Devlin also died in the accident.

{3} On the date of the accident, Devlin carried two automobile insurance policies with State Farm. The policies provided liability coverage with limits of $100,000 per person and $300,000 per accident (Devlin policies). In addition, Wiard owned two State Farm automobile policies in force on his two automobiles. These policies each provided for stacked uninsured/underinsured motorist coverage of $100,000 per person and $200,000 per accident.

{4} Wiard was appointed personal representative of the estates of Amy and Keri, pursuant to NMSA 1978, § 41-2-3 (2001).

As personal representative, Wiard settled the wrongful death claims of Amy and Keri with State Farm under the Devlin policies for the policies' limits of $200,000, combining the $100,000 "each person" limits of the policies for each of the two children. In the settlement agreements, Wiard explicitly reserved any separate and individual claims he might have based upon the deaths of Keri and Amy, who were insured under his own State Farm policies.

{5} After settling the wrongful death claims, Wiard asserted a separate and individual claim for parental loss of consortium under each of his UIM policies. After State Farm denied that claim, Wiard filed an action for declaratory relief against State Farm. The parties filed cross-motions for summary judgment and stipulated to the relevant facts. The trial court granted summary judgment in favor of Wiard and this appeal followed.

### STANDARD OF REVIEW

{6} This Court reviews de novo whether the trial court erred in determining there are no genuine issues of material fact, ruling that coverage exists for Wiard's separate loss of consortium claims under his UIM coverage, and granting summary judgment in Wiard's favor. See Mitchell–Carr v. McLendon, 1999–NMSC–025, ¶ 30, 127 N.M. 282, 980 P.2d 65. Because no issue of material fact exists as to the underlying facts of this case, we review whether the trial court properly applied the law to the uncontradicted facts. See Strata Prod. Co. v. Mercury Exploration Co., 121 N.M. 622, 627, 916 P.2d 822, 827 (1996).

### ANALYSIS

#### The UIM Policies' Language

{7} We look to the language of Wiard's UIM policies to determine the nature and extent of Wiard's UIM coverage. See Gonzales v. Allstate Ins. Co., 122 N.M. 137, 140, 921 P.2d 944, 947 (1996) (stating that an insurance claim arises from the policy language). Under the terms of Wiard's State Farm UIM policies, " 'Bodily injury to one person ' includes all injury and damages to others resulting from this bodily injury."

This language is comparable to that of the insured in *Gonzales,* in which case our Supreme Court held that a claim for loss of consortium was subsumed by liability payments for the bodily injury that gave rise to the loss. *See id.* at 138, 921 P.2d at 945. The same question presents itself in this case: is any claim against Wiard's policies subsumed by the settlement against the Devlin policies? In light of *Gonzales,* in order for Wiard to state a viable claim for loss of consortium against his own UIM insurance, this case must be distinguished from *Gonzales.* We evaluate this case within the *Gonzales* framework below.

### 2. Separate Cause of Action for Loss of Parental Consortium

{8} Wiard argues that he has a separate cause of action for loss of consortium which was not affected by his settlement, as personal representative, of his daughters' wrongful death claims. Indeed, our Supreme Court has recognized claims for loss of consortium when made by the "family caretaker and provider of parental affection to the deceased." *Fernandez v. Walgreen Hastings Co.,* 1998–NMSC–039, ¶ 33, 126 N.M. 263, 968 P.2d 774. The fact that Wiard has a separate cause of action, however, does not address the viability of such a claim against his own UIM coverage. That question was addressed by our Supreme Court's decision in *Gonzales.*

{9} Gonzales similarly sought separate compensation for loss of consortium from her own UIM policy, above and beyond the liability policy limits paid for her husband's bodily injury. *Id.* at 138–39, 921 P.2d at 945–46. She argued that the loss of consortium was not only a separate cause of action, but a separate bodily injury that implicated "each accident" policy limits. *Id.* Our Supreme Court held that under the language of the policy, loss of consortium was not a bodily injury. There, as here, the policy covered bodily injury, including damages sustained by others as a result of that bodily injury. *Id.* at 140, 921 P.2d at 947. Without specific policy language to the contrary, bodily injury does not include emotional injuries such as loss of consortium, and

instead emotional injuries are covered under the language of "damages to others resulting from this bodily injury." *See id.* at 140–42, 921 P.2d at 947–49. Wiard's argument that his consortium claim is one for "bodily injury" within the meaning of his UIM stacked policies, therefore, is contrary to the law as set out in *Gonzales.*

{10} Wiard further argues that the loss of consortium must be treated as a separate injury because the compensation for bodily injury that State Farm paid under the Devlin policies only addressed the daughters' injuries, and was paid to the estate. He charges that his own policy addresses his own emotional injury that resulted from their deaths, and that his emotional injury was not contemplated in the settlement of the daughters' claims. These facts do not alter our analysis. Because, under *Gonzales,* Wiard's emotional injury resulted from bodily injury to his daughters, his claims are derivative of, and subsumed by, the policy limits settlement of his daughters' claims. *See id.* at 142–43, 921 P.2d at 949–50.

{11} The fact that Wiard initiated a release that purportedly reserved his personal claims is also of no legal import. The release read: "This release does not bar any claims that Theodore J. Wiard, individually, may have in the above described matter." With respect to claims against his own UIM policies, this release bears no legal significance. As discussed more fully below, the law as expounded in *Gonzales,* as well as in the statutes and regulations governing UIM coverage, prevents such a claim. Wiard's release, stating merely that it "does not bar any claims," cannot create contractual rights that do not otherwise exist. Because Section 66–5–301(B) and the Department of Insurance regulations preclude his claims from being brought, the language of the release does not establish State Farm's liability.

### The Offset

{12} Wiard's loss of consortium claims are, under the policies, factually and ultimately derivative of the wrongful death claims: his emotional suffering is the result of the tragic loss of his daughters. Having determined that Wiard's claims under his own policy for

his loss of parental consortium are not separate from the compensation for the wrongful death claim that Wiard settled in his capacity as personal representative, the loss of consortium is subsumed under the settlement for the bodily injuries· suffered by Wiard's daughters.

{13} Under *Schmick v. State Farm Mutual Automobile Insurance Co.*, 103 N.M. 216, 704 P.2d 1092 (1985), a UIM insurer in New Mexico is entitled to an offset for proceeds the primary insurer paid to an insured. In this case, State Farm argues that *Schmick* requires an offset against Wiard's UIM coverage of $200,000 for the $200,000 the Devlin policies paid to settle the wrongful death claims of the children's estates. Wiard, on the other hand, argues that since he is an insured and recovered nothing under the Devlin policies for his loss of consortium claim, he is entitled to recover from State Farm under his UIM policies.

{14} Relying on *Gonzales*, State Farm claims it has paid all it is required to pay under the "each person" provision of the Devlin policies. State Farm further argues it is entitled to an offset under *Schmick* for the $200,000 already paid to Wiard as personal representative of the children's estates. *Gonzales* is instructive in that it makes clear that under New Mexico law, UIM benefits for loss of consortium arising out of bodily injury to another shall not exceed those recovered for the bodily injury. *Id.* at 142, 921 P.2d at 949. Moreover, the language of the policies in issue notwithstanding, the *Gonzales* Court noted that the Department of Insurance had promulgated a regulation applicable to all uninsured motorist policies that limited the insurance company liability. *Id.* at 142, 921 P.2d at 949. That regulation now reads:

> The company's limit of bodily injury liability for all damages, including damages for care and loss or services, arising out of bodily injury sustained by one person in any one accident shall not exceed the amount specified for unknown motorist/uninsured motorist coverage as stated on the declarations page for bodily injury to one person in any one accident.

13.2.1. NMAC 17.6.1 (1997). Applying the plain meaning of this regulation, any claim Wiard may have for loss of consortium under his UIM policy cannot be paid in excess of that paid under the bodily injury provisions of Devlin's policies.

{15} Wiard argues that *State Farm Mutual Automobile Insurance Co. v. Valencia*, 120 N.M. 662, 905 P.2d 202 (Ct.App.1995) renders his loss of consortium claims viable. We read *Valencia* to be distinguishable from this case on its facts. In *Valencia*, the UIM coverage was invoked to address unpaid damages for multiple claimants who suffered bodily injuries. *Id.* at 663, 905 P.2d at 203. Here, it is Wiard, who received no legally cognizable bodily injury of his own as a result of the accident, who seeks to collect on his UIM policy. As a result, we hold *Valencia* to be inapplicable to this case.

{16} Wiard urges this Court to rely on *Valencia* to determine that Devlin was underinsured. However, underinsured motorists are defined by statute only with reference to the limits of bodily injury liability.

> "[U]nderinsured motorist" means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.

Section 66–5–301(B). Because the bodily injury claims for Wiard's daughters were fully settled, Devlin was not underinsured by virtue of the lack of coverage for loss of consortium.

{17} Following the reasoning of *Gonzales*, Wiard's UIM claims for loss of consortium are not viable, because State Farm paid out all it was required to when it paid the $100,000 policy limits for each of Wiard's daughters' claims. To the extent that loss of consortium is covered by the UIM policies, it is only "as consequential damages arising from injury to another," *id.* at 143, 921 P.2d at 950, and the coverage for those injuries has offset Wiard's UIM coverage.

## CONCLUSION

{18} We hold the trial court erred by granting summary judgment in favor of Wiard in his declaratory judgment action. Accordingly, we reverse.

{19} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and JAMES J. WECHSLER, Judges.